## Case No. 11,207.

### The PLANTER.

[7 Pet. (32 U. S.) 324.]

District Court, E. D. Louisiana. Dec. 10, 1830.[1]

ADMIRALTY—JURISDICTION—DIVERSE CITIZENSHIP —REPAIRS.

[1. The admiralty jurisdiction of a federal district court is not dependent upon diversity of citizenship, but extends to suits between citizens of the same state.]

[Cited in The Calisto, Case No. 2,316.]

[2. A contract for repairs on a vessel, their extent being unknown, provided that an account should be kept, subject to the approval of the captain, who made no objection to the account, when submitted, but expressed himself as satisfied with the work, saying that he was not surprised at it, "because there was a great deal more work done than he had any idea of." Held, that the owners of the vessel could not thereafter object to the price, or the workmanship.]

[3. The failure of repair men to deliver a vessel within the stipulated time should not subject them to any forfeiture or reduction of charge, when it appears that the work was subject to the captain's approval, who caused the delay by opposing certain repairs afterwards found to be necessary, and promised indemnity for such delay.]

[See note at end of case.]

A libel was filed on the 10th of December, 1830, by William L. Howard and Francois Varion, shipwrights, residing in New Orleans, against the steamboat Planter (Sylvan Peyroux, claimant), claiming the sum of two thousand one hundred and ninety-three dollars and thirty-five cents, being the balance asserted to be due to them for the price of work, labor, materials furnished, and repairs made on the said boat, under contracts of 13th September and 19th October, 1830, and alleging that by the admiralty law, and the law of the state of Louisiana, they had a lien on the said boat for the payment of the same, and that she was about leaving the port of New Orleans, and praying process, etc. The account for the work, materials, etc., was annexed to the libel.

The owners of the steamboat Planter filed a claim and plea setting forth that they were all citizens of Louisiana, all resided in the city of New Orleans, and that the libelants were also citizens of that state, and that, therefore, the district court of the United States had not jurisdiction of the case. By a supplemental answer the respondents denied all the facts set forth in the libel.

The plea to the jurisdiction of the court was overruled and dismissed, and the parties

[1] [Modified and affirmed by supreme court. 7 Pet. (32 U. S.) 324.]

proceeded to take the testimony of witnesses by depositions, which were filed as part of the proceedings in the case. By the first contract the shipwrights stipulated to do certain specified work and furnish certain materials, the same to be approved by "experts," for which they were to be paid the sum of one thousand one hundred and fifty dollars. By the contract of the 19th of October, the Planter was to be hauled on shore, and in consideration of four hundred and seventy-five dollars, of which two hundred were to be paid in cash, and two hundred and seventy-five in one month, after the boat should be launched and set afloat, certain other repairs were to be done to her, and she should be delivered and ready to receive a cargo by the 20th of November, under a penalty of twenty-five dollars per day for each day her delivery should afterwards be retarded by the shipwrights.

THE COURT [2] made the following decree: "The libelants claim a balance due them of two thousand one hundred and ninety-three dollars and thirty-five cents for work and materials furnished in the repairs of the steamboat Planter at the request of the claimants, and for which they have a lien by the local law. The claimants, in their first answer, deny the jurisdiction of the court, on the ground that all the parties were citizens of the same state, to wit, of Louisiana; that objection, however, was not insisted upon at the trial, and is not sustainable on the admiralty side of this court. In their supplemental answer they deny generally the allegations of the libelants, and pray for the dismissal of the libel, and damages. The whole account of the libelants against the owners amounts to three thousand six hundred and ninety-three dollars and thirty-five cents, including the amount of the written contracts entered into between the parties; of this sum, they acknowledge the payment of one thousand five hundred dollars, leaving, as they allege, a balance of two thousand one hundred and ninety-three dollars and thirty-five cents due them. By the first contract, made on the 11th September, 1830 (the boat being then in the water), the libelants agreed, for the sum of one thousand one hundred and fifty dollars, to make certain repairs on that part of the boat which was above water, from the wheel house to the bow; and it was further stipulated that if they made any other repairs, by replacing unsound timbers in any other part of the boat above water, not then discovered, they were to be paid separately for so much. After commencing the work, it was perceived that the boat required repairs under the water, as well as above, and in consequence of that discovery the claimants, through Captain Jarreau, master of the boat, and one of the owners, agreed to pay the libelants four hundred and seventy-five dollars for hauling out the boat, and for launching her when she

should be repaired; and, as the quantity of work to be done was uncertain, it was stipulated that an account of it should be kept, and if approved of by Captain Jarreau, under whose inspection the work was to be done, the claimants bound themselves to pay the amount thus to be ascertained. This latter contract was made on the 19th October last. After the boat was hauled out, it appears the work under both contracts was carried on simultaneously. On a first view of the account current exhibited in this case, it would seem, from the dates, that at least a part of the work to be done under the first contract was again charged, but the subsequent testimony taken in this case shows that these charges were made on account of the extra repairs provided for under the first contract; and it further appears that all the charges made after the 19th of October have no relation to the first agreement, but all relate to the work contemplated by the second contract. From the complexion of the testimony taken by the complainants, their real defence seems to be that the prices of the work charged are greater than they should be, that it was not executed in a proper manner, and that the libelants have forfeited a considerable sum of money in consequence of not delivering the boat within the time stipulated in the contract.

"As to the two first objections, the evidence is conclusive in favor of the libelants. Captain Jarreau himself, upon being shown the account, did not object to it; on the contrary, expressed himself satisfied with the work, and said he was 'not surprised at it, because there was a great deal more work done than he had any idea of.' With respect to the nondelivery of the boat at the time agreed upon, the fault chiefly attaches to Captain Jarreau, who, in several instances, retarded the work by opposing repairs which were proposed by the libelants, but which turned out to be indispensable, and were afterwards ordered by him to be made; besides, he promised them indemnity against their obligation to pay twenty-five dollars a day for every day they were in default in delivering the boat, and gave as the reason that they had to do more work than was at first anticipated. The charge of four hundred and seventy-five dollars is for the specific service of hauling out and launching the boat, and must be allowed as such. On the whole, the evidence and exhibits in the case fully sustained the demand of the libelants. It is therefore ordered, adjudged, and decreed that the claimants pay to them the said sum of one thousand one hundred and ninety-three dollars and thirty-five cents, and costs of suit."

[NOTE. An appeal was taken to the supreme court, which affirmed the decree, except as to a balancing item of $275 for hauling out the steamboat. Peyroux v. Howard, 7 Pet. (32 U. S.) 324. Mr. Justice Thompson, in delivering the opinion, said: "The want of jurisdiction in the district court is not put on the ground set up in the plea in the court below,—that all the

---

[2] [Samuel A. Harper was district judge for the district of Louisiana at this time.]

parties were citizens of the same state. This has been very properly abandoned here, as entirely inapplicable to admiralty proceedings in the district court. * * *"

[The jurisdiction was then sustained on the ground that the tide has some influence on the waters of the Mississippi at New Orleans, causing them to swell, although it is not enough to slacken the current. In the later case of The Genesee Chief, 12 How. (53 U. S.) 443, the court finally established the principle that the admiralty jurisdiction was dependent on the navigability of the waters, and that the presence of a tide was immaterial.

[The second objection to the jurisdiction—that the vessel was to be employed in navigating waters beyond the influence of the tide—was overruled on the ground that the service was maritime, since the voyage was to begin at New Orleans, within the admiralty jurisdiction; following The Thomas Jefferson, 10 Wheat. (23 U. S.) 428.

[Continuing, the learned justice said: "An express contract having been entered into between the parties, under which these repairs were made, is no waiver of the lien, unless such contract contains stipulations inconsistent with the lien, and from which it may fairly be inferred that a waiver was intended, and the personal responsibility of the party only relied upon. * * * In the first contract no time is fixed for the payment of the one thousand five hundred dollars; it became payable, therefore, as soon as the work was completed. And the repairs under the second contract were to be paid for as soon as the account was approved by Captain Jarreau. There is nothing, therefore, from which it can be inferred that any time of credit was to be allowed. The balance of two hundred and seventy-five dollars, for hauling out the steamboat, * * * was to be paid in one month after the boat was launched and set afloat. A credit was here given, and a credit, too, beyond the time when, in all probability, the boat would have left the port of New Orleans; for it can hardly be supposed that it would have taken thirty days to load her. And by the Civil Code of Louisiana (article 2748) the privilege ceases if the ship or boat is allowed to depart without exercising the right. As to this sum, therefore, the decree is erroneous. * * * By the second contract, payment was to be made when the account was approved by Captain Jarreau; no formal approval appears to have been made. But he was a part owner, and superintended the repairs; and one of the witnesses says he was present when the account was presented to Captain Jarreau, who said he was not surprised at it, because there was a great deal more work than he had any idea of, and that he did not think at first that she required so much. This, although not a direct, was an implied, approval of the account. The delay in not delivering the boat to the appellants by the time specified in the contract was occasioned by her unexpected state and condition, and the extent of repairs required. And, besides, the delivery at the time mentioned in the contract was dispensed with by Captain Jarreau."]